FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 10, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMBATH Y.,<br><br>                              Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  2:17-CV-64-RMP<br><br>ORDER DENYING PLAINTIFF'S<br>AND GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

    BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Sambath Y.,[1] **ECF No. 11**, and the Commissioner

of Social Security (the "Commissioner"), **ECF No. 12**.  Sambath sought judicial

review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim

for Social Security disability insurance benefits.  ECF No. 3.  The Court has

reviewed the motions, the administrative record, and is fully informed.  For the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first
name and last initial, and, subsequently Plaintiff's first name only, throughout this
decision.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 1

reasons stated below, the Commissioner's motion, ECF No. 12, is granted, and

Sambath's motion, ECF No. 11, is denied, resulting in a denial of benefits.

## BACKGROUND

### A. Sambath's Claim for Benefits and Procedural History

On October 7, 2013, Sambath applied for disability insurance benefits alleging

that she had become disabled.  Administrative Record ("AR") 230–38.[2]  Plaintiff

also sought supplemental security income, through an application filed at or around

the same time.  Sambath claimed that beginning on December 31, 2011, she became

unable to work on the basis of depression and anxiety.  AR 264.

### B. November 24, 2015 Hearing

Sambath was represented by attorney Dana Madsen at her hearing before

Administrative Law Judge ("ALJ") R.J. Payne on November 24, 2015, in Spokane,

Washington.  An impartial medical expert testified regarding Sambath's

psychological history and records and gave an opinion regarding the degree of

Sambath's impairments.  Sambath then gave testimony in response to the ALJ's and

her attorney's questions.  Finally, a vocational expert testified in response to

questions from the ALJ regarding hypothetical scenarios and follow-up questions

from Sambath's attorney.

---

[2] The AR is filed at ECF No. 8.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 2

1    Sambath testified that she was 37 years old at the time of the hearing. AR 63.

2    She was born in Cambodia, and immigrated to the United States as a young child,

3    where she attended school through eleventh grade. *See* AR 64. She has three

4    children, two of whom were minors at the time of the hearing and living in Seattle

5    with their father. Sambath's relationship with her children's father ended in

6    approximately 2009, and she moved to Spokane shortly thereafter. Sambath's past

7    work included time as a home attendant, a waitress, a receptionist, a child-care

8    provider, and an activity assistant at a retirement home.

9    From December 2011 until mid-2015, Sambath did not work because her

10    depression and anxiety symptoms "went downhill." AR 69. In approximately June

11    2015, she began to work at a gas station and increased her hours to a full-time

12    schedule in approximately mid-September 2015. *See* AR 66. At the time of the

13    hearing, Sambath was living with a roommate who was planning to move out of the

14    apartment. AR 95. According to Sambath's testimony, her typical day consists of

15    waking up at 5:00 a.m., walking eleven blocks to work, working from 6:30 a.m. until

16    2:30 p.m., and walking home after completing her shift. AR 66. Sambath then

17    prepares and eats her dinner, cleans up, and watches television or reads fiction

18    before going to sleep. AR 93. Sambath is able to sleep approximately nine hours

19    with the aid of prescription medication; without taking medication she sleeps four

20    hours or less. AR 89.

21    / / /

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 3

1    **C. ALJ's Decision**

2    On January 13, 2016, the ALJ issued an unfavorable decision.  AR 20–35.

3    Applying the five-step evaluation process, Judge Payne found:

4    **Step one:**  Sambath's full-time work as a cashier at a gas station beginning in

5    mid-September 2015 through the date of the ALJ's decision met the criteria for

6    substantial gainful activity and does not qualify as work that is supported or

7    facilitated by special work conditions.  However, the ALJ further found that there

8    was a continuous twelve-month period in which Sambath did not engage in

9    substantial gainful activity since her alleged onset date of December 31, 2011.

10    **Step two:**  Sambath has the following severe impairments: "depressive

11    disorder not otherwise specified, major depressive disorder, unspecified personality

12    disorder with cluster B traits, [and] chronic posttraumatic stress disorder . . . ."  AR

13    23.  The ALJ did not find that carpal tunnel syndrome or issues with Sambath's right

14    ankle constitute severe impairments because they were not substantiated by medical

15    signs or laboratory findings or any other basis for finding that those conditions were

16    medically determinable.  AR 25.

17    **Step three:**  Sambath does not have an impairment or combination of

18    impairments that meets or medically equals one of the listed impairments in 20

19    C.F.R. Part 404, Subpart P, Appendix 1.

20    / / /

21    / / /

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 4

**Residual Functional Capacity ("RFC"):**  Sambath has the RFC:

> to perform a full range of work at all exertional levels but with the following mental non-exertional limitations.  The claimant can understand, remember, and carry out simple instructions and some more complex instructions; can handle have [sic] normal interaction with the public but not in a confrontational type work setting; can handle occasional contact with co-workers, but not in a team-work type work setting; and can handle normal supervision, but no over-the-shoulder supervision.

AR 27.

**Step four:**  Sambath is capable of performing past relevant work as a home attendant, waitress at a bar, receptionist, and recreation aide.  Sambath also is capable of performing other jobs that exist in the national economy, including representative occupations such as production assembler, electronics worker, and mail sorter.

**Step five:**  Sambath was not under a disability, as defined by the Social Security Act, from December 31, 2011, through the date of the ALJ's decision.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 15, 2016.  AR 1–2; *see also* 20 C.F.R. § 404.981, § 416.1481.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1  benefits only if the ALJ's determination was based on legal error or not supported by

2  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing

3  42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not

4  disabled will be upheld if the findings of fact are supported by substantial evidence."

5  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

6  Substantial evidence is more than a mere scintilla, but less than a preponderance.

7  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v.*

8  *Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such

9  evidence as a reasonable mind might accept as adequate to support a conclusion."

10  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

11  inferences and conclusions as the [Commissioner] may reasonably draw from the

12  evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

13  1965).  On review, the court considers the record as a whole, not just the evidence

14  supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20,

15  22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

16       It is the role of the trier of fact, not the reviewing court, to resolve conflicts in

17  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

18  interpretation, the court may not substitute its judgment for that of the

19  Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

20  Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be

21  set aside if the proper legal standards were not applied in weighing the evidence and

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 6

making a decision.  *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432,

433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the

administrative findings, or if there is conflicting evidence that will support a finding

of either disability or nondisability, the finding of the Commissioner is conclusive.

*Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a benefits

claimant shall be determined to be under a disability only if her impairments are of

such severity that the claimant is not only unable to do her previous work but cannot,

considering her age, education, and work experiences, engage in any other

substantial gainful work which exists in the national economy.  42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both

medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).

### C. Sequential Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 7

1   determines if she is engaged in substantial gainful activities.  If the claimant is

2   engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§

3   404.1520(a)(4)(i), 416.920(a)(4)(i).

4           If the claimant is not engaged in substantial gainful activities, the decision

5   maker proceeds to step two and determines whether the claimant has a medically

6   severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

7   416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination

8   of impairments, the disability claim is denied.

9           If the impairment is severe, the evaluation proceeds to the third step, which

10  compares the claimant's impairment with a number of listed impairments

11  acknowledged by the Commissioner to be so severe as to preclude any gainful

12  activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R.

13  § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed

14  impairments, the claimant is conclusively presumed to be disabled.

15          If the impairment is not one conclusively presumed to be disabling, the

16  evaluation proceeds to the fourth step, which determines whether the impairment

17  prevents the claimant from performing work she has performed in the past.  If the

18  claimant is able to perform her previous work, she is not disabled.  20 C.F.R.

19  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC

20  assessment is considered.

21

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 8

1    If the claimant cannot perform this work, in the fifth and final step in the

2    process the decision maker determines whether the claimant is able to perform other

3    work in the national economy in view of her residual functional capacity and age,

4    education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

5    416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

6    The initial burden of proof rests upon the claimant to establish a prima facie

7    case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

8    Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

9    is met once the claimant establishes that a physical or mental impairment prevents

10   her from engaging in her previous occupation.  The burden then shifts, at step five,

11   to the Commissioner to show that (1) the claimant can perform other substantial

12   gainful activity, and (2) a "significant number of jobs exist in the national economy"

13   that the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

15   Plaintiff raises the following issues regarding the ALJ's decision:

16   1.  Did the ALJ properly evaluate the medical opinion evidence?

17   2.  Did the ALJ properly evaluate Sambath's symptoms testimony?

18   3.  Did the ALJ properly assess Sambath's residual functional capacity?

## DISCUSSION

### *Treatment of medical opinion evidence*

21   In evaluating whether an applicant for benefits is disabled on the basis of

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 9

mental illness, an ALJ must assess the individual's impairment in: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Keyser v. Comm'r*, 648 F.3d 721, 725 (9th Cir. 2011) (an ALJ must make findings and conclusions on each component of the "special psychiatric review technique"). 20 C.F.R. § 404.1520a.

With respect to medical opinions, an ALJ must accord more weight to a treating physician's opinion than an examining physician's, and an examining physician's opinion carries more weight than a non-examining, reviewing, or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must articulate "specific and legitimate" reasons, supported by substantial evidence in the record, to reject the opinion of either a treating or an examining doctor. *Lester*, 81 F.3d at 830–31.

William Jackline, Ed.D.

Dr. Jackline conducted a psychological examination of Plaintiff during a 1.5 hour interview in March 2014. AR 353–62. The ALJ found that some of Dr. Jackline's opinions regarding Plaintiff's impairments were supported by the evidence in the record, and others were not. Specifically, the ALJ gave significant weight to Dr. Jackline's opinion that Sambath would be moderately to significantly impaired if she were required to work closely with others. The ALJ gave "very little weight" to Dr. Jackline's opinions that Plaintiff is mildly impaired in her ability to

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

understand, remember, and follow lengthy, complex, or fast-paced directions and

does not know how to access services. AR 31. The ALJ gave the following reasons

for his decision to weigh certain of Dr. Jackline's opinions lightly:

> Dr. Jackline's remaining opinions rely heavily on the claimant's subjective complaints, which are not fully credible as discussed above. Further, Dr. Jackline was a one-time examiner that only reviewed one examination note generated in connection with her application for DSHS benefits, which specifically mentioned malingering as a rule-out diagnosis.

AR 31.

There is substantial evidence in the record to show that Plaintiff was able to

identify and access services, thereby contradicting one of Dr. Jackline's conclusions.

*See, e.g.,* AR 325, 326. Furthermore, a consulting physician's opinion may be

rejected if it is based on a claimant's subjective complaints which were properly

discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v.

Commissioner*, 169 F.3d 595 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th

Cir. 2018). Therefore, the Court finds the ALJ's reasons pertinent and sufficient to

give less weight to some of Dr. Jackline's opinions.

John Arnold, Ph.D.

Dr. Arnold examined Sambath in 2013 and 2015 in connection with her

application for Washington State Department of Social and Health Services benefits.

He opined in 2013 that Sambath has mild to marked difficulty, most limiting in

social and persistence areas, with performing basic work activities. AR 350. In

2015, Dr. Arnold found Sambath's limitations in the same areas to be slightly worse

than in 2013, but his diagnoses remained the same.  The ALJ gave Dr. Arnold's

opinions regarding Sambath's functional limitations "little weight," finding that "Dr.

Arnold's opinions regarding marked difficulty in performing basic work activities is

not consistent with or supported by the evidence of record, including his own

examination notes."  AR 31.  The ALJ pointed to the following as support for

discounting Dr. Arnold's opinion: Dr. Arnold's "suspicion" in both 2013 and 2015

that some of Sambath's behavior could be the result of malingering rather than

psychosis; Dr. Arnold's finding that Sambath performed worse in the area of

memory even though Dr. Arnold found no "interval worsening or head injury in her

treating provider records" between the two exam dates; and Dr. Arnold's lack of

SSA-specific program knowledge and brief examination of Sambath on two

occasions, two years apart, "without the benefit of reviewing any treating provider

records."  AR 31.

        The Court finds the ALJ's reasons for giving little weight to Dr. Arnold's

conclusions to be specific and legitimate.  *See Lester*, 81 F.3d at 830–31.  Before

reaching his conclusions regarding Sambath's functional limitations, Dr. Arnold

found that malingering would need to be ruled out as the basis for some of

Sambath's behaviors, as well as psychosis, before any definitive diagnosis could be

made.  AR 329, 427.  Dr. Arnold also noted that Sambath made a "quite

questionable effort" in responding to questions during the examination, AR 427, and

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 12

1   gave "vague" responses, AR 351.  Moreover, there are other internal inconsistencies

2   to Dr. Arnold's examination reports, which the ALJ alluded to in his decision.

3   Namely, although Dr. Arnold found that Sambath's limitations either persisted at the

4   same level or worsened between 2013 and 2015, he concluded in 2015 that

5   vocational training would "minimize or eliminate barriers to employment," when he

6   had posited in 2013 that further training would not help.  AR 350, 428.  Even if

7   Plaintiff disagrees with the weight given to Dr. Arnold's opinions, substantial

8   evidence in the record supports the ALJ's treatment of them.

9       State Agency Consultants

10      Plaintiff argues that the opinions of the two state agency psychological

11  consultants, Richard Borton, Ph.D., and Dan Donahue, Ph.D., cited in the ALJ's

12  decision "did not constitute substantial evidence," and the ALJ should not have

13  given them great weight.  ECF No. 13 at 8.  With respect to Dr. Borton, the ALJ

14  found that his opinion that the record was insufficient to rate Plaintiff's functioning

15  "was not consistent with evidence [sic] received at the reconsideration and hearing

16  levels and is given little weight."  AR 30.  The ALJ did not give great weight to any

17  other opinion by Dr. Borton, so Plaintiff's contention appears to be unfounded.

18      With respect to Dr. Donahue, the ALJ found that his opinion that Plaintiff was

19  moderately limited in her activities of daily living, social function, and activities

20  requiring concentration, persistence, and pace was "not consistent with the evidence

21  of record," and, accordingly, gave that opinion little weight.  AR 30.  Moreover, the

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 13

1    opinions to which the ALJ gave significant weight are merely observations of other

2    aspects of the record, such as Plaintiff's medical record that indicates limited

3    treatment for Plaintiff's mental health issues.  *See* AR 115–20, 122–33.  In that

4    regard, Dr. Donahue's remaining opinions and observations both rest on substantial

5    evidence elsewhere in the record and are harmless for purposes of review of the

6    ALJ's decision in that they merely reiterate information available elsewhere.

7                    ***Treatment of Plaintiff's symptoms testimony***

8            Regarding Sambath's testimony about the intensity, persistence, and limiting

9    effects of her mental health issues, the ALJ found that "[t]he claimant's subjective

10   complaints alleging limitations beyond those described in the residual functional

11   capacity are not fully credible and that the objective medical evidence is not fully

12   consistent with the claimant's allegations."  AR 29.  Sambath argues that the ALJ

13   impermissibly considered Sambath's overall character or truthfulness rather than

14   limiting his considerations to Sambath's statements about her symptoms and the

15   evidence relevant to her impairments.  ECF No. 11 at 10–11; *see* SSR 16-3p.

16   Specifically, Sambath argues that the ALJ erred in basing his credibility

17   determination in part on "concerns regarding whether Sambath's reports were

18   accurately recorded as to when she had insurance, her employment, and substance

19   abuse, because they are not directly related to symptoms, are not relevant to

20   symptom claims."  ECF No. 11 at 11.  Sambath further argues that the ALJ

21   impermissibly described Sambath as taking a "low dose" of the medication for

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 14

1   treatment of depression when a medical professional had not so described Sambath's

2   medication regimen.  ECF No. 13 at 2; *see also* AR 28.

3       An ALJ evaluating the severity of a claimant's symptoms may consider: (1)

4   the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

5   testimony or between her testimony and her conduct; (3) the claimant's daily

6   activities; (4) the claimant's work record; and (5) testimony from physicians or third

7   parties concerning the nature, severity, and effect of claimant's condition.  *Thomas*

8   *v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In finding that the claimant's

9   testimony as to the severity of her impairments is unreliable, the ALJ must make a

10  credibility determination with findings sufficiently specific to permit the court to

11  conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v.*

12  *Commissioner*, 169 F.3d 595, 601–02 (9th Cir. 1999).  A negative credibility finding

13  must be supported by "specific, clear and convincing" reasons when there is no

14  evidence of malingering.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014);

15  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  An ALJ does not need to

16  base on adverse credibility finding on clear and convincing reasons if the record

17  contains affirmative evidence suggesting that the claimant is malingering.

18  *Carmickle v. Commissioner*, 533 F.3d 115, 1160 (9th Cir. 2008); *Smolen v. Chater*,

19  80 F.3d 1273, 1281–82 (9th Cir. 1996).

20      The ALJ who determined Plaintiff's claims found that her "inconsistent

21  statements, symptom magnification, and failure to follow recommended treatment

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 15

1   lessen the credibility of her limitation allegations." AR 29. Each of these reasons

2   individually, and all of them taken together, are sufficient bases for the ALJ to

3   conclude that Plaintiff's self-reports of the severity of her symptoms should not be

4   fully credited. Moreover, any error in concluding that Sambath's medication

5   regimen reflected a "low dose" or that her treatment approach to her mental issues

6   was "conservative" is harmless because the ALJ gave clear and convincing reasons

7   for partially discrediting Sambath's symptoms testimony, which were supported by

8   substantial evidence in the record.

9       Therefore, the Court finds that the ALJ's adverse credibility finding was

10  supported by substantial evidence and was not based on legal error.

11      ***Legal sufficiency of ALJ's determination of Plaintiff's ability to do her***

12  ***previous or other work***

13      The ALJ determined that Sambath retains the residual functional capacity to

14  perform a full range of work at all exertional levels with several non-exertional

15  limitations related to her compromised mental health. AR 27.

16      Although Plaintiff does not address the issue of the RFC in her reply brief, *see*

17  ECF No. 13, in her initial brief on appeal she emphasizes that her work as a cashier

18  is under "supportive circumstances" in which her supervisor prompted her to

19  perform the repetitive tasks that made up her work there, including stocking shelves,

20  cooking, and operating the cash register. ECF No. 11 at 4. However, the record

21  does not demonstrate that Sambath is permitted to work at a "lower standard of

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 16

productivity . . . than other employees," that she did not perform the work well, or that the assistance she receives from her supervisor is of a different nature than the direction provided any other employees. *See* 20 C.F.R. § 404.1573. Therefore, the Court does not find that Sambath's current work conditions undermine the ALJ's findings regarding Sambath's residual functional capacity.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment as directed, and provide copies to counsel.

**DATED** May 10, 2018.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17